Clerk's Office
Filed Date: 3/31/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW
YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ASTORIA LANDING, INC.,

             Plaintiff,

     -against-

CITY OF NEW YORK, NYC DEPARTMENT
OF BUILDINGS, NYC ENVIRONMENTAL
CONTROL BOARD, NYC BOARD OF
STANDARDS AND APPEALS, NYC
COUNCIL, and NYC OFFICE OF
ADMINISTRATIVE TRIALS AND HEARINGS

             Defendants.
-------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
20-cv-03885 (CBA) (RLM)

**AMON, United States District Judge:**

    In its Amended Complaint, Astoria Landing, Inc. ("Astoria Landing" or "Plaintiff") brings various claims against the City of New York ("City"), NYC Department of Buildings ("DOB"), NYC Environmental Control Board ("ECB"), NYC Board of Standards and Appeals ("BSA"), NYC Council ("City Council"), and NYC Office of Administrative Trials and Hearings ("OATH") (collectively, "Defendants") related to the repeated fines Defendants issued to Plaintiff for an outdoor advertising sign on its building at 24-59 32nd Street in Astoria, New York. (ECF Docket Entry ("D.E.") # 18 ("Am. Compl.").) Plaintiff alleges that Defendants violated its: (1) right to freedom of speech; (2) Fifth and Fourteenth Amendment rights to due process and equal protection of the laws; and (3) rights under 42 U.S.C. §§ 1981, 1983, and 1985.

    Three motions are currently before the Court: (1) Plaintiff's motion for declaratory judgment; (2) Defendants' motion to dismiss Plaintiff's First Amendment, due process, § 1981, § 1983, and § 1985 claims; and (3) Defendants' motion for summary judgment on Plaintiff's equal protection claim. For the following reasons, I grant Defendants' motion for summary judgment

on the equal protection claim and their motion to dismiss with respect to all other claims.[1]  I, therefore, deny Plaintiff's motion for declaratory judgment.

## BACKGROUND

### I.    The Amended Complaint

Plaintiff purchased the building—a four-story apartment house—in 1998. (Am. Compl. ¶¶ 16-17.)  The building's wall has no windows, making it "suitable for a large advertising sign." (Id. ¶ 17.)  Plaintiff asserts that outdoor advertising signs have been continuously placed on said wall since 1941, and that it purchased the building with the intention of leasing out the wall space for advertisements to generate revenue.  (Id.)  In purchasing the building, Plaintiff relied upon records demonstrating that Defendant DOB issued permits for this specific wall to be used for advertising signs in 1941 and 1981.  (Id. ¶¶ 20-21.)

In 1961, the New York City Zoning Resolution ("Zoning Resolution"), the collection of statutes regulating City zoning, divided the City into three types of zoning districts—residential, commercial, and manufacturing.  (Mot. to Dismiss 2-3.)  The Zoning Resolution prohibited advertising signs in residential districts, (id. at 3), but existing advertising signs were permitted for an additional 10-year grace-period, going forward from December 15, 1961.  See Zoning Resolution § 52-731.  Although Plaintiff vigorously disagrees with the City's classification of the building's neighborhood as a residential zone, (see, e.g., D.E. # 12-9 ("Cross-Mot.") at 16), Plaintiff does not actually dispute that the building is located in a zone classified as residential.

---

[1] Defendants argue that several of the Defendants should be dismissed from the case for other reasons, as well.  For one, they argue Plaintiff "failed to plead facts" that connected the City Council and the BSA to the alleged constitutional violations.  (See D.E # 14 ("Mot. to Dismiss") at 5 n.1.)  They also argue that the ECB should be dismissed because it is no longer a separate agency, but rather, operates under the OATH.  (See id.)  Since I have decided to dismiss or grant summary judgment on all the claims, the issue of dismissal with regards to each of the individual Defendants is moot.

Defendants admit that Defendant DOB issued a permit in 1981 that allowed for an outdoor advertising sign on the building and concede that the permit was issued "in error, because an outdoor advertising sign at that location could not be grandfathered in as a non-conforming use" after the end of the 10-year grace period. (Mot. to Dismiss 4.) In 2011, Defendant DOB began issuing notices of violations (also referred to as "summonses") to Plaintiff regarding the sign on the building.[2] (See id.; Am. Compl. ¶ 28.)

## II. Prior Litigation

After receiving its first notice of violation, Plaintiff commenced various challenges. On June 28, 2012, Defendant ECB upheld a determination by Defendant DOB that Plaintiff violated Zoning Resolution § 22-32 and Administrative Code of the City of New York § 28-502.2 by maintaining an advertising sign on its building. See Astoria Landing, Inc. v. N.Y.C. Env't Control Bd. (Astoria I—Article 78), No. 218732012, 2014 WL 12722671, at *1 (N.Y. Sup. Ct. Dec. 29, 2014) (discussing the history of Plaintiff's challenges to the first fine). Plaintiff then initiated an Article 78 proceeding in Queens County Supreme Court. On December 29, 2014, the court denied and dismissed the petition and specifically rejected Plaintiff's claim that the City was estopped from arguing that the sign on the building was unlawful because of the erroneously-issued 1981 permit. See id. at *1-*2. Plaintiff appealed, and on March 9, 2017, the Appellate Division affirmed the judgment. Astoria I—Appellate Division, 50 N.Y.S.3d at 451. The court stressed that "[v]ested rights cannot be acquired in reliance upon an invalid permit. '[T]he mistaken or erroneous issuance of a permit does not estop a municipality from correcting errors, even where there are harsh results.'" Id. at 450 (quoting Westbury Laundromat, Inc. v. Mammina, 62 A.D.3d

---

[2] Although Plaintiff indicates it received the first notice of violation in 2012, (see Am. Compl. ¶ 28), it appears that Defendant DOB began issuing such notices in 2011. See Astoria Landing, Inc. v. N.Y.C. Env't Control Bd. (Astoria I—Appellate Division), 50 N.Y.S.3d 448, 449 (App. Div. 2017).

888, 890 (2009)). The New York Court of Appeals denied leave to appeal, see Astoria Landing, Inc. v. N.Y.C. Env't Control Bd., 29 N.Y.3d 913 (2017), and the Supreme Court denied certiorari, see Astoria Landing, Inc. v. N.Y.C. Env't Control Bd., 138 S. Ct. 429 (2017).

Defendant DOB issued three additional notices of violation in 2015, and Plaintiff challenged their issuance; following a hearing on the violations, a hearing officer sustained one of them, determining Plaintiff had "an impermissible outdoor advertising sign in a residential district." Astoria Landing, Inc. v. Del Valle (Astoria II—Appellate Division), 188 A.D.3d 1189, 1190-91 (2020) (discussing the history of this subsequent round of violations and fines). On August 25, 2016, Defendant ECB affirmed the hearing officer's determination. Id. at 1191. Plaintiff commenced an Article 78 proceeding in Queens County Supreme Court, but that court transferred it to the Appellate Division, Second Department. Id. The Appellate Division determined that the case was erroneously transferred, but chose to resolve "the matter on the merits in the interest of judicial economy." Id. The court rejected Plaintiff's claim that there was evidence of "bad faith" in the record and explicitly held that "DOB's failure to realize until 2011 that the 1981 permit had been issued in error does not establish bad faith." Id. at 1192. It also noted that "[t]he petitioner was afforded the 'opportunity to be heard in a meaningful manner at a meaningful time' required as a matter of due process." Id. (quoting Kaur v. N.Y. State Urban Dev. Corp., 15 N.Y.3d 235, 260 (2010)).

## DISCUSSION

### I.   Defendants' Motion to Dismiss[3]

Defendants argue, principally, that Plaintiff's claims are barred under the doctrines of res judicata or collateral estoppel, as the issues raised were already decided in state proceedings.

---

[3] Defendants have incorporated their Motion to Dismiss into their Motion for Summary Judgment on Plaintiff's equal protection claim. (See D.E. # 24 ("Mot. for Summ. Judg.") at 1 n.1.)

## 1. Plaintiff's Claims are Barred by Res Judicata and/or Collateral Estoppel

### A. Res Judicata

In its Amended Complaint, Plaintiff seeks an injunction "restraining enforcement of any further summonses or fines by Defendants" regarding the advertising sign on Plaintiff's building. (Am. Compl. 15.) Plaintiff also seeks a declaration of "the rights and other legal relations of the parties to the subject matter here in controversy," (id. at 16), which, in practice, would have the same effect as the declaratory judgment Plaintiff seeks in its Cross-Motion,[4] (see Cross-Mot. 46).[5] Defendants argue that Plaintiff's claims for declaratory and injunctive relief are barred by res judicata. To establish res judicata, the moving party must demonstrate that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

Defendants have easily established the first and second elements. It is well-established that Article 78 proceedings constitute a final adjudication on the merits. See Merced v. Ponte, 807 F. App'x 127, 128 (2d Cir. 2019) (summary order); see also Kern v. Joyce, 857 F. App'x 691, 692-93 (2d Cir. 2021) (summary order).[6] As Plaintiff has challenged Defendants' conduct in multiple

---

[4] Specifically, in the Cross-Motion, Plaintiff requests a declaratory judgment "as to whether or not the Defendant NYC DOB had the legal right to issue any Summonses whatsoever in connection with Plaintiff Astoria Landing, Inc.['s] large painted advertising sign." (Cross-Mot. 46.)

[5] In its opposition to Defendants' motion for summary judgment, Plaintiff articulates its requested declaratory judgment in yet a different way, framing it as a request to "strik[e] the City's arbitrary, mid-block zoning between 31st Street and 32nd Street and designation of one side of Interstate 278 as commercial zoning C4-3 and the other side of Interstate 278 mistakenly as residential zone R5B and the improper distinction between 'accessory signs' and 'advertising signs.'" (D.E. # 25-2 ("Summ. Judg. Opp.") at 4.) I decline to consider this request for relief since Plaintiff never amended its Amended Complaint to include it. See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 263 (E.D.N.Y. 2009) (Bianco, J.).

[6] Since Article 78 adjudications do not provide awards for monetary damages, such claims are not barred by res judicata. See Karamoko v. N.Y.C. Hous. Auth., 170 F. Supp. 2d 372, 377 (S.D.N.Y. 2001); Beharry v. M.T.A. N.Y.C. Transit Auth., No. 96-cv-1203 (FB), 1999 WL 151671, at *5 (E.D.N.Y. Mar. 17, 1999), aff'd, 242 F.3d 364 (2d Cir. 2000). However, Article 78 proceedings can bar these claims under the doctrine of collateral estoppel, as will be discussed.

Article 78 proceedings—and even appealed to the Second Department—this first element is satisfied. Since there is no dispute that Plaintiff was a party to these adjudications, the second element is also satisfied.

The only issue deserving further discussion is whether the instant claims were raised or could have been raised in the prior action. In determining whether the third element of res judicata is satisfied, New York[7] follows the transactional analysis approach; thus, res judicata "bars 'all other claims arising out of the same transaction or series of transactions' that formed the basis of the original suit 'even if' those other claims are 'based upon different theories or . . . seek[] a different remedy.'" Lipman v. Rodenbach, 852 F. App'x 578, 582 (2d Cir. 2021) (summary order) (alterations in original) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)).

Defendants argue that Plaintiff's claims for declaratory and injunctive relief satisfy this third requirement because they "arise out of the 'same transaction or series of transactions' as those at issue in" the Astoria I and Astoria II proceedings. (See Mot. to Dismiss 12 (quoting O'Brien, 54 N.Y.2d at 357).) In Astoria I—Article 78, not only did the court uphold the determination that Plaintiff violated the Zoning Resolution's sign restriction for residential districts, but it explicitly rejected Plaintiff's argument that Defendant ECB should be estopped from arguing that the sign is unlawful because Defendants had issued the permit in 1981. 2014 WL 12722671, at *1. On appeal, the Second Department affirmed that the Article 78 proceeding "properly determined that the ECB had a rational basis for rejecting [Plaintiff's] contention that the sign was valid," Astoria I—Appellate Division, 50 N.Y.S.3d at 450, and stressed that "'[v]ested rights cannot be acquired in reliance upon an invalid permit.' . . . Since the 1981 permit was invalid, the petitioner's estoppel

---

[7] Since this is a New York-based federal court, I rely on New York law for determining the preclusive effect of the prior action. See Giannone v. York Tape & Label, Inc., 548 F.3d 191, 192-93 (2d Cir. 2008) ("When 'determin[ing] the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state.'" (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 87 (2d Cir. 2000))).

contention . . . fails." Id. (quoting Westbury Laundromat, Inc., 62 A.D.3d at 890). In Astoria II—Appellate Division, 188 A.D.3d at 1192, the Second Department again affirmed Defendant ECB's finding that Plaintiff violated the Zoning Resolution and again rejected Plaintiff's argument about the 1981 permit, stating "[t]he DOB's failure to realize until 2011 that the 1981 permit had been issued in error does not establish bad faith."

Plaintiff argues that res judicata should not apply because N.Y. C.P.L.R. § 7803 limits the matters that can be raised in an Article 78 proceeding, and it could not have brought the instant claims in its Article 78 challenges. (See Cross-Mot. 40-43.) For several reasons, this argument fails. For one, § 7803(3) specifically permits questions of "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion," and both the declaratory and injunctive relief Plaintiff seeks relate directly to the legality of Defendants' "determination" about the sign on Plaintiff's building. Moreover, the same precise causes of action need not be specified in the prior proceeding for res judicata to apply. Under New York law, "it does not matter that a [federal statutory] claim was not expressly asserted in the [prior action], '[f]or it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" Saud v. Bank of N.Y., 929 F.2d 916, 919 (2d Cir. 1991) (quoting Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1234 (2d Cir. 1977), cert. denied, 434 U.S. 903 (1977)); see also Miller v. City of New York, No. 17-cv-4198 (RJD), 2019 WL 2164100, at *2 (E.D.N.Y. May 10, 2019) (finding res judicata barred a § 1983 claim for declaratory judgment because even though the Article 78 proceeding did not specifically address the § 1983 claim, it did address the facts that were the basis for it).

Furthermore, although facial challenges to the constitutionality of statutes are not appropriate for an Article 78 proceeding, "an [A]rticle 78 proceeding is generally the proper

7

vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner." Kovarsky v. Hous. & Dev. Admin., 31 N.Y.2d 184, 191 (1972); Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 71 (2d Cir. 1990) ("[T]he question of whether the statute has been applied in an unconstitutional fashion may be raised directly in an Article 78 proceeding.");[8] see, e.g., Towles v. Eagen, 799 N.Y.S.2d 715, 716 (Sup. Ct. 2005) (addressing First Amendment freedom of speech and federal equal protection claims in an Article 78 proceeding); Walton v. N. Y. State Dep't of Corr. Servs., 8 N.Y.3d 186, 193-94 (2007) (determining that an Article 78 proceeding was an appropriate forum for the alleged violations of "the power to tax," "due process rights," "the right to equal protection," and "free speech and association rights" under the New York State Constitution). Since Plaintiff's constitutional challenges are not to the regulations themselves but to how they were applied to it, these claims could have been raised in the Article 78 proceeding.[9]

In sum, Plaintiff has taken an erroneously narrow view of the types of claims that can be brought in an Article 78 proceeding. Contrary to its argument, under New York's approach to res judicata, "[o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction are barred." Russo v. City of New York, 705 F. App'x 38, 39 (2d Cir. 2017) (summary order) (non-substantive quotation error in original) (quoting O'Brien, 54 N.Y.2d at 357). Here, the claims for declaratory and injunctive relief "ar[ose] out of the same

---

[8] Furthermore, when petitioners have challenged both the constitutionality of a legislative enactment and the constitutionality of its application in an Article 78 proceeding, courts have simply converted the proceeding to a combined declaratory judgment action and Article 78 proceeding to address both claims rather than only address the as-applied challenge. See, e.g., Williams v. Dep't of Corr. & Cmty. Supervision, 979 N.Y.S.2d 489, 496 (Sup. Ct. 2014), aff'd, 24 N.Y.S.3d 18 (2016); Cap. Fin. Corp. v. Comm'r of Tax'n & Fin., 639 N.Y.S.2d 501, 502-03 (App. Div. 1996).

[9] Plaintiff did, in fact, raise a procedural due process claim in Astoria II–Appellate Division, 188 A.D.3d at 1192, regarding the hearing officer's refusal to accept a post-hearing memorandum of law.

transaction or series of transaction[s]" that had already been litigated in the state court proceedings and, thus, they are barred by res judicata.

### B. Collateral Estoppel

Although Plaintiff's claims for money damages are not precluded by res judicata, they are barred by collateral estoppel. Under New York law, to establish that collateral estoppel bars re-litigation of an issue, the moving party must demonstrate that: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).

Defendants argue that all of Plaintiff's remaining claims—other than the equal protection claim for which they seek summary judgment—are barred by collateral estoppel. (Mot. to Dismiss 13-14.) Defendants note that Plaintiff has already litigated the legality of Defendants' enforcement actions, as well as whether the sign violated City zoning regulations. (Id.) They further highlight that Plaintiff's argument regarding its reliance on the 1981 permit was already addressed and rejected in prior state proceedings. (Id.); see also Astoria I—Appellate Division, 50 N.Y.S.3d at 450-51.

In response, Plaintiff argues that collateral estoppel should not bar its claims because "none of the issues named in the instant Federal complaint in this Court were considered whatsoever at all by those [state] Courts." (Cross-Mot. 42.) Plaintiff appears to argue that unless identical claims were raised in the prior and subsequent actions, an issue cannot be precluded by collateral estoppel. However, "[t]he fact that the two proceedings involve different causes of action does not preclude the application of collateral estoppel, for . . . it is the underlying factual issue—not the legal theory—that determines whether a subsequent claim is barred." Karamoko, 170 F. Supp. 2d at

378. In fact, "[t]he prior decision of the issue need not have been explicit, . . . '[i]f by necessary implication it is contained in that which has been explicitly decided.' If the decision was implicitly necessary, 'it will be the basis for collateral estoppel.'" Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2d Cir. 2003) (final alteration in original) (internal citation omitted) (quoting Norris v. Grosvenor Mktg. Ltd., 803 F.2d 1281, 1285 (2d Cir. 1986)). The legality of maintaining advertising signs on Plaintiff's building and the legality of Defendants' enforcement actions are integral to all claims in the instant action—and they have already been addressed, explicitly or implicitly, in state court proceedings.

Plaintiff's First Amendment claim is based on alleging that Defendants' enforcement actions are "continual[ly] wrongful and harassing," (Am. Compl. ¶ 40), even though the Article 78 proceedings have already upheld them as lawful. Plaintiff's claim that its due process rights were violated is premised on alleging that the 1941 and 1981 permits have been revoked without notice and hearing. (See id. ¶ 47.) However, the Second Department made clear that "[v]ested rights cannot be acquired in reliance upon an invalid permit." Astoria I—Appellate Division, 50 N.Y.S.3d at 450 (quoting Westbury Laundromat, Inc., 62 A.D.3d at 890). Plaintiff's § 1981 claim is premised on the allegation that Defendants have "interfered with Plaintiff's right 'to make and enforce contracts' with third party advertisers for commercial advertising on Plaintiff's real property," (Am. Compl. ¶ 51), but it has already been litigated and decided that the commercial advertising for which Plaintiff seeks to enter into contracts with third parties is not lawful. Plaintiff's § 1983 claim is based on alleging that "Defendants have deprived Plaintiff of its right to place a commercial advertising sign on its own real property under color of State law." (Id. ¶ 56.) However, prior proceedings already determined that Plaintiff violated the law when it placed a commercial advertising sign on said real property and, thus, has no right to do so. Finally,

10

Plaintiff's § 1985 claim is premised on alleging that Defendant's enforcement actions are unlawful, (id. ¶ 59), but the prior state proceedings have consistently validated their legality.

A plaintiff cannot avoid collateral estoppel by simply using an issue litigated—and decided against him—in state court as the basis for a federal or constitutional cause of action. Doing so would be "an end run around [the plaintiff's] Article 78 proceeding to achieve an impermissible 'second bite at the apple.'" Miller, 2019 WL 2164100, at *2 (quoting Pappas v. Giuliani, 118 F. Supp. 2d 433, 439 (S.D.N.Y. 2000)). In sum, Plaintiff's claims for damages as related to these alleged violations are barred by collateral estoppel.

### 2. Even if These Claims Were Not Precluded, They Fail as a Matter of Law

Even if Plaintiff's aforementioned claims were not barred by res judicata or collateral estoppel, each would still fail as a matter of law for the following reasons.

#### A. Plaintiff's Due Process Claim

"In order to demonstrate a violation of due process rights based on a zoning decision, a plaintiff must demonstrate that he possesses a federally protected property right to the relief sought. This, in turn, 'requires a demonstration that [the plaintiff] had a clear entitlement to the permit under state law.'" Petruso v. Schlaefer, 312 F. App'x 397, 399-400 (2d Cir. 2009) (summary order) (alteration in original) (internal citation omitted) (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)). Here, Plaintiff did not have a "clear entitlement . . . under state law" to the permit upon which it repeatedly relies. Id. Plaintiff's due process claim is based on an alleged property interest in the 1941 and 1981 permits. (Am. Compl. ¶ 47.) The 1981 permit was a renewal of the 1941 permit, Astoria Landing I–Appellate Division, 50 N.Y.S.3d at 449, and it is undisputed that the 1981 permit was issued in error. Simply put, "it is . . . well settled that 'a landowner does not have a vested property right to a building permit issued erroneously.'" Bain

v. Town of Argyle, 499 F. Supp. 2d 192, 195 (N.D.N.Y. 2007) (quoting Gottlieb v. Village of Irvington, 69 F. Supp. 2d 553, 556 (S.D.N.Y. 1999)); see also Crown Castle NG E. LLC v. Town of Oyster Bay, No. 17-cv-3445 (SJF) (ARL), 2020 WL 4587653, at *16 (E.D.N.Y. Feb. 21, 2020), report and recommendation adopted, 2020 WL 2393915 (E.D.N.Y. May 12, 2020). Since the 1981 permit was issued erroneously, Plaintiff has no property interest in it and has failed to establish an essential prerequisite for its due process claim.

### B. Plaintiff's First Amendment Claim

The Supreme Court has established a four-part test for determining whether a restriction on commercial speech is constitutional: (1) "whether the . . . commercial speech . . . concern[s] lawful activity and [is] not . . . misleading"; (2) "whether the asserted governmental interest is substantial"; (3) "whether the regulation directly advances the governmental interest asserted"; and (4) "whether it is not more extensive than is necessary to serve that interest." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 566 (1980).

Plaintiff's main attack on the constitutionality of the outdoor advertising prohibition is that it does not, in fact, advance the Defendants' stated justification for the prohibition. Defendants assert that the prohibition promotes neighborhood character, safety, and aesthetics, which have already been recognized as substantial governmental interests in Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 103, 110. (2d Cir. 2010).[10] (See Mot. to Dismiss 24; D.E. # 15 ("Reply to Mot. to Dismiss") at 9-10.) Plaintiff seems to argue that the prohibition does not actually advance these stated governmental interests and questions Defendants' judgment for maintaining the prohibition in what Plaintiff argues is a highly trafficked and commercialized area. (See Cross-Mot. 35-36.) This argument is not compelling. The Second Circuit stressed in Clear

---

[10] In their motion to dismiss, Defendants cite only page 110 in support of this point, but I find that additional portions of Clear Channel substantiate it.

Channel that "Supreme Court precedent instructs that, if the City's determination about how to regulate outdoor commercial advertising is 'reasonable' . . . then we should defer to that determination," 594 F.3d at 104, and that "it is not this Court's role to second guess the City's urban planning decisions," id. at 105. Plaintiff's argument hinges on its claim that Defendants do not actually care about neighborhood character, safety, and aesthetics, but buying into that claim requires, at the very least, second-guessing Defendants' urban planning decisions.

Moreover, even if the Court takes Plaintiff at its word that its building is in a highly commercialized, trafficked area, that does not undermine the reasonableness of the prohibition. As Defendants argue, the City has a "legitimate interest" in "limit[ing] the number of outdoor advertising signs that may distract drivers on the City's densely populated arterial highways," (Reply to Mot. to Dismiss 10), and in light of this interest, the prohibition seems eminently reasonable. Plaintiff raises other challenges, but they are meritless and largely rely on selectively quoting cases that are not directly relevant. Thus, even if this claim were not precluded, I would dismiss it because Plaintiff has failed to adequately allege a First Amendment violation.

### C. Plaintiff's 42 U.S.C. § 1983 Claim

Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution." Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir. 1994). In the Amended Complaint, Plaintiff alleges that the § 1983 claim is based on the fact "that Defendants have deprived Plaintiff of its right to place a commercial advertising sign on its own real property under color of State law pursuant to 42 U.S.C. Section 1983." (Am. Compl. ¶ 56.) Astoria Landing has not identified any constitutional provision giving it the right to place a commercial sign on its property. In its Cross-Motion, Astoria Landing suggests that the basis of its § 1983 claim is that Defendants interfered with its engagement in interstate commerce because the advertising sign on

13

the building at issue is visible from an interstate highway and, thus, its rights under the Commerce Clause have been violated. (Cross-Mot. 28-29.) That assertion does not save Plaintiff's claim. As a preliminary matter, since Plaintiff did not raise this issue in the Original or Amended Complaint, its merits need not be addressed. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). Moreover, it is still not clear what actual right Plaintiff alleges has been violated. It is true that the Supreme Court recognized that Commerce Clause claims can be brought under § 1983, see Dennis v. Higgins, 498 U.S. 439, 440 (1991), but Plaintiff still has not alleged sufficient facts indicating how its right to engage in interstate commerce was actually infringed upon by Defendants' conduct. Accordingly, I would dismiss Plaintiff's § 1983 claim on the merits, even if it were not precluded.

### D.  Plaintiff's 42 U.S.C. § 1981 Claim

The Supreme Court has stated that, "[t]o prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). Plaintiff has not pled that there was any race-based discrimination, but rather, claims it has suffered "geographical discrimination," which, it argues, "is just as forbidden by 42 U.S.C. Section 1981 as . . . any other type of discrimination." (Cross-Mot. 25.) I decline the invitation to redraft § 1981 to cover geographical discrimination. It is clear that § 1981 claims are for race-based discrimination. As such, even if it were not already barred, Plaintiff's § 1981 claim would still be dismissed.

### E.  Plaintiff's 42 U.S.C. § 1985 Claim

To establish a § 1985 claim, "a plaintiff must allege '(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges

14

and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.'" Finn v. Anderson, 592 F. App'x 16, 20 (2d Cir. 2014) (summary order) (quoting Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)).  Further, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"  Roach, 165 F.3d at 146 (quoting Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).

Plaintiff's § 1985 claim relies on the allegation that Defendants "conspired to enter upon the Grand Central Parkway Service Road . . . for the purpose of depriving Plaintiff of the Equal Protection of the Laws and the Equal Privileges and Immunities of the Laws." (Am. Compl. ¶ 59.) From this pleading, it is not evident what plausible conspiracy occurred or what plausible deprivation of Plaintiff's rights or privileges or injury to its person or property occurred.  With § 1985 claims, "[c]omplaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.'"  Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order) (quoting Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977) (per curiam)).  Furthermore, Plaintiff does not plead that any "racial or . . . otherwise class-based, invidious discriminatory animus" motivated Defendants' alleged conduct, an additional reason that Plaintiff has failed to properly state a § 1985 claim.  Accordingly, even if this claim were not precluded by collateral estoppel, I would dismiss the claim on the merits.

## II.  Defendants' Motion for Summary Judgment

To support its equal protection claim, Plaintiff identified 17 signs that it alleges are similarly situated to the advertising sign on the building it owns, but whose respective building

15

owners did not experience similar enforcement from Defendants.  (Am. Compl. ¶ 37.)  The signs

are as follows:

1. Large structure with LED bright lights on a train trestle
2. Cellino Law Firm sign
3. Halvatzis Realty sign
4. Pest Control sign
5. Makris CPA sign
6. Rosse Spray Tan Studio sign
7. Bartolino's Fine Italian Cuisine sign
8. SOS Plumbing sign
9. Tire Shop sign
10. Coca Cola sign
11. RPM Book Your Holiday Party Now sign
12. Staples sign
13. Starbucks sign
14. Gulf Gas Station sign
15. Pizza & Deli sign
16. Triboro Terrace Realty sign
17. Neptune Diner sign

(Id.)

## STANDARD OF REVIEW

It is only appropriate to grant summary judgment if the pleadings and evidence that would

be admissible at trial show that there is "no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby

Inc., 477 U.S. 242, 248 (1986).  At summary judgment, the court's function is "to determine

whether there is a genuine issue for trial."  Id. at 249.  There is a genuine issue "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  However,

it is not sufficient for the non-moving party to rely on "mere speculation and conjecture."  Harlen

Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

### 1. Plaintiff's Equal Protection Claim Fails Under Either Possible Theory

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs., 273 F.3d at 499. The "prototypical equal protection claim" involves discrimination based on race, alienage, national origin, sex, or membership in other protected classes. Id. "Where, as here, Plaintiff does not claim to be a member of a protected class, he may bring an equal protection claim under one of two theories: selective enforcement or 'class of one.'" Rankel v. Town of Somers, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014).

To prevail under the selective enforcement theory, "a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019) (quoting Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995)). To prevail under the class of one theory, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston v. Town Bd., 610 F.3d 55, 59-60 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). Defendants argue that Plaintiff's claim fails under both theories.[11]

---

[11] Plaintiff does not specify under which theory it brings the claim, but I will consider the applicability of both.

## A. Selective Enforcement Theory

Defendants argue persuasively that Plaintiff's claim fails under the selective enforcement theory because the Amended Complaint fails to provide sufficient facts about the 17 signs to support finding that the Plaintiff is "similarly situated" to the respective sign owners and/or building owners. Hu, 927 F.3d at 93. Although selective enforcement claims do not require a plaintiff to demonstrate he is "identical" to his comparators, he still must establish a high degree of similarity, such as a "reasonably close resemblance," id. at 96 (quoting Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014)), or being "similarly situated in all material respects," id. (quoting Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000)). Plaintiff did not include details about its proposed comparators that are needed to establish whether they are similar in all, or even some, "material respects." Id. (quoting Graham, 230 F.3d at 39). Critically absent is information about the 17 signs' respective zoning districts. Furthermore, Plaintiff does not address whether any of the 17 signs are "advertising signs," like the one on its building, or "accessory signs," which are signs that advertise for on-site businesses that are in the same zoning lot. The Zoning Resolution distinguishes between "advertising signs" and "accessory signs," permitting the latter in residential zoning districts in some cases. (Mot. for Summ. Judg. 4); see also Infinity Outdoor, Inc. v. City of New York, 165 F. Supp. 2d 403, 406 (E.D.N.Y. 2001) ("The heart of the Zoning Resolution's regulation of signs since 1940 has been the distinction between off-site commercial [(advertising)] and on-site [(accessory)] signs.")

Plaintiff has failed to establish that it was "similarly situated" to its proposed comparators and, thus, has failed to establish an equal protection claim under the selective enforcement theory. Hu, 927 F.3d at 93. "[W]here a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific examples . . . that were similar to plaintiff's . . . and demonstrative

18

of the disparate treatment alleged." Amid v. Village of Old Brookville, No. 11-cv-3800 (LDW), 2013 WL 527772, at *6 (E.D.N.Y. Feb. 7, 2013) (dismissing an equal protection claim because even though the plaintiff identified comparator properties, she failed to provide "any indication as to the similarity of the location or size of the neighbors' properties, or that the applications of such homeowners were accepted, rejected or in any way similar to Plaintiff's project."); see also Rankel, 999 F. Supp. 2d at 545; Viteritti v. Incorporated Village of Bayville, 918 F. Supp. 2d 126, 135-36 (E.D.N.Y. 2013).

There are other serious failings with the equal protection claim, which further support Defendants' motion for summary judgment. Defendants provide a declaration from Alex J. Berger, (D.E. # 22 ("Berger Decl.")), Director of the Sign and Padlock Enforcement Unit at Defendant DOB. Mr. Berger identifies in detail how the 17 signs do not support Plaintiff's claim. For one, 9 of the 17 signs are located in commercial zoning districts—not residential ones—and, as such, are not subject to the same advertising sign prohibition. These are the signs for: (1) SOS Plumbing, (2) Coca Cola; (3) RPM; (4) Staples; (5) Starbucks; (6) Gulf Gas Station; (7) Pizza & Deli; (8) Triboro Terrace Realty; and (9) Neptune Diner. (Berger Decl. ¶ 10.) Additionally, 11 of the signs are accessory signs: (1) Pest Control; (2) Makris CPA; (3) Rosse Spray Tan Studio; (4) SOS Plumbing; (5) Tire Shop; (6) Staples; (7) Starbucks; (8) Gulf Gas Station; (9) Triboro Terrace Realty; (10); Neptune Diner; and (11) Pizza & Deli. (Id. ¶ 8.) Thus, these are not subject to the same prohibition as the one on Plaintiff's building. (Id. ¶ 9.) The sign with LED lights on the train trestle is on MTA property, and, Mr. Berger explains, under New York State Public Authorities Law §§ 1266(8) and 1261(18-a), signs on MTA property are exempt from Defendant City's sign regulations. (Id. ¶ 12.) Plaintiff has not presented evidence challenging Mr. Berger's sign assessment. Thus, not only has Plaintiff failed to adequately allege that these signs are

19

sufficiently similar, but Defendants have demonstrated that the vast majority are, in fact, dissimilar in critical ways.

That leaves only 3 of the 17 signs identified by Plaintiff: (1) Cellino Law Firm; (2) Halvatzis Realty; and (3) Bartolino's Fine Italian Cuisine. Mr. Berger notes that these signs are in the same residential zoning district as Plaintiff's, but he points out that Defendants treat them as "not lawful"—just like Plaintiff's. (Id. ¶ 13.) Defendants have taken various enforcement actions against the respective property owners. (Id. ¶¶ 14-20.) Thus, even if one assumes arguendo that these are similarly situated comparators and even if Plaintiff had alleged sufficient facts regarding their similarity in the Amended Complaint, the claim would still fail because Plaintiff's building sign was not "selectively treated" as compared to them.

Plaintiff suggests that the enforcement actions against these three signs do not undermine its equal protection claim because some of them only occurred after this litigation brought the violations to Defendants' attention. (D.E. # 25 ("Kesoglides Decl.") ¶ 5; D.E. # 25-1 ("Kerson Decl.") ¶¶ 7-9.) However, contrary to Plaintiff's argument, the fact that Defendants responded swiftly when these violations came to light suggests they were motivated by the wholly legitimate intent to enforce zoning regulations, not to cover up activity taken against Plaintiff. Furthermore, the Second Circuit has held that a plaintiff "cannot establish an equal protection violation unless it shows that the [defendant] consciously applied a different standard of enforcement to similarly situated establishments." LaTrieste Rest. v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999). Going after these proposed comparators diminishes, rather than supports, Plaintiff's claim that Defendants "consciously applied" a different standard.

Both Plaintiff's owner, Steve Kesoglides, and Plaintiff's counsel, Paul E. Kerson, chastise Defendants for pursuing these enforcement actions against the other building owners. (See

Kesoglides Decl. ¶ 5; Kerson Decl. ¶ 21 ("[Defendants'] solution to this problem is now as irrational as it can possibly be: they now are going to seek to impose large fines on [the] Cellino Law Firm sign, the Bartolino's Fine Italian Cuisine sign and the Halvatzis Realty sign. That is their solution to their Equal Protection Violation?").) Their disappointment suggests that Plaintiff does not, in fact, seek equal enforcement of the law, but rather, that the law not be enforced.

Additionally, Defendants correctly argue that Plaintiff has not sufficiently alleged that the differential treatment was "motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Hu, 927 F.3d at 91 (quoting Zahra, 48 F.3d at 683). To the contrary, it is not genuinely disputed that Defendants pursued enforcement actions against Plaintiff to promote compliance with regulations, and the Second Circuit has stated that "[i]f the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice." See Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005). After reviewing Plaintiff's filings, I have identified what could be construed as a challenge to this argument. Mr. Kesoglides asserts in a passing sentence in his declaration that he was discriminated against because he did not use an outdoor sign broker. (Kesoglides Decl. ¶ 7.) Plaintiff provides no facts to substantiate this claim nor identifies a single property owner who used a sign broker. This single, unsubstantiated assertion fails to raise an inference of "malicious or bad faith intent." Hu, 927 F.3d at 91 (quoting Zahra, 48 F.3d at 683).

Finally, there are other general problems with Plaintiff's opposition to Defendants' summary judgment motion. First, Plaintiff did not file a Rule 56.1 statement and, thus, failed to comply with Local Civil Rule 56.1(b). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and

admissible," and "[i]n the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).

Second, by and large, Plaintiff refuses to accept facts and selectively quotes the law. For example, Mr. Kesoglides insists on referring to his zoning district as "the mistaken mislabeled R5B residential zone" and claiming that "[t]his boundary line is arbitrarily, capriciously, improperly wrongfully drawn." (Kesoglides Decl. ¶ 4.) I am not unsympathetic to Plaintiff's frustration, but Astoria Landing has repeatedly litigated the validity of enforcement actions based on this residential zoning classification, and it has repeatedly lost. To keep ignoring this reality underscores why Plaintiff's other claims are barred by res judicata and collateral estoppel. Further, Plaintiff heavily leans on the Supreme Court case United States v. Virginia Military Institute, 518 U.S. 515 (1996), asserting "that a State's rationale for unequal treatment must be 'exceedingly persuasive.'" (Summ. Judg. Opp. 1 (quoting Va. Mil. Inst., 518 U.S. at 533).) However, Plaintiff omits the essential part of the case's holding: "exceedingly persuasive justification" is specifically required for "classifications based on gender." Va. Mil. Inst., 518 U.S. at 532-33. By no means is "exceedingly persuasive justification" required for all classifications that governments choose to make. Here, the classification Plaintiff challenges must only pass the rational basis test. See LeClair v. Saunders, 627 F.2d 605, 611 (2d Cir. 1980) ("As a general matter, the equal protection clause serves to protect suspect classes and fundamental interests against inequitable treatment, but other types of inequities and classifications may be justified by a showing of mere rationality."); see also Vanderveer v. Zoning Bd. of Appeals, No. 20-4252, 2021 WL 3745741, at *2 (2d Cir. 2021) (summary order). For all of these reasons, Plaintiff cannot establish liability under the selective enforcement theory.

## B. Class of One Theory

To succeed under a class of one theory, a plaintiff must demonstrate a higher degree of similarity with its comparison examples than it would under a selective enforcement theory. See Hu, 927 F.3d at 93-94. Since Plaintiff has not pled sufficient similarity for a selective enforcement claim, it follows that Plaintiff has not established a class of one claim. See Viteritti, 918 F. Supp. 2d at 136 ("Given that plaintiffs have failed to meet even the lesser standard of 'similarly situated,' they cannot maintain an equal protection claim under either a selective enforcement or class of one theory."); Hampshire Recreation, LLC v. Village of Mamaroneck, No. 14-cv-7228 (CS), 2016 WL 1181727, at *9 (S.D.N.Y. Mar. 25, 2016), aff'd, 664 F. App'x 98 (2d Cir. 2016); Gentile v. Nulty, 769 F. Supp. 2d 573, 580 n.15 (S.D.N.Y. 2011).

## CONCLUSION

For these reasons, I conclude that Defendants' Motion to Dismiss and Motion for Summary Judgment are GRANTED. Plaintiff's Motion for Declaratory Judgment is DENIED.

SO ORDERED.

Dated: March 3|, 2022
      Brooklyn, New York

                                   s/Carol Bagley Amon
                                  Carol Bagley Amon
                                  United States District Judge